[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a limited contested action for dissolution of marriage and requests for custody, visitation, support, alimony, property division and counsel fees. Following several days of hearings and a review of the testimony (which the court evaluated based upon the witness' demeanor, responses and attitudes displayed on the witness stand as well as the interests and bias of the witnesses, all of which reflected upon their integrity and credibility),[1] exhibits, financial affidavits, an arbitration report, and post trial briefs, the court finds as follows:
1. The wife, plaintiff, whose maiden name was Carol J. Labonville and the defendant, husband, intermarried at Berlin, New Hampshine on September 13, 1969.
2. Both parties to this action have resided continuously in this state for at least twelve months next preceding the date of the filing of the complaint in this action. All statutory stays have expired. This court has jurisdiction.
3. The marriage of the parties has broken down irretrievably.
4. The plaintiff and defendant have two minor children issue of the marriage, to wit:
Jennifer L. Roy, born September 6, 1978
Lindsay A. Roy, born May 11, 1982
5. No other children have been born to the wife since the date of the CT Page 13201 marriage.
6. No individual or agency is presently responsible by virtue of judicial award for the custody or support of either of said minor children.
7. Neither party nor the minor children have received or are receiving aid or support from the State of Connecticut or any of its municipalities.
8. The court has taken into account the considerations set forth in General Statutes § 46b-81 and § 46b-82, including, but not limited to, the following:
a. The length of the marriage of twenty-six years.
b. The age of the parties, wife is forty-five and husband is forty-six.
 c. The health of the parties. The husband's is good, and although the wife has had some back problems and has a history of mental illness, there are no health problems sufficient to impede her ability to be employed or to improve her employment skills.
 d. No fault by either party is found as the cause for the dissolution of marriage. The alleged physical abuse of the wife by the husband is too remote in time to merit consideration. The affair by the husband with another woman, at least by the time the wife learned of it, was subsequent to the breakdown in the marriage which had occurred on or before the time the wife moved out of the marital bedroom. Beyond that, any fault appears to be equal on the part of both parties. Accordingly, the cause of the dissolution is not a factor in determining the awards and decisions hereinafter set forth.
 e. The disparity in income. The husband's gross earnings are $52,000 per year (excluding rental income which he will no longer have once the income producing property is sold). His net weekly wage is $661.50. The wife's net weekly wage is $190.22. His net weekly wage is nearly three and a half times more than the wife's net weekly wage.
 f. The ability of the husband to continue to earn substantially more than the wife, with the disparity, based upon their present occupations, likely to become even greater. The wife can earn more money once she improves her secretarial skills which have been dormant for years. As soon as she has sufficient funds, she should take courses to improve her secretarial skills. The husband is an experienced real estate developer who, prior to the decline of the CT Page 13202 real estate market, was able to earn substantially more than he does now. Once he gets rid of his debts and the market improves, he will earn a great deal more, and although the incomes of both parties should increase, the disparity will be even greater.
 g. The wife's contribution to the marriage. In addition to raising the children and maintaining the household, she was employed for much of her marriage. Accordingly, although the husband produced much of the assets of the parties, her aforementioned contribution makes the contributions as well as preservation and appreciation of value of said assets equal. As a matter of fact, much of the assets have decreased in value, which is the fault of the market and not of either party. If anything, the husband, as a real estate developer, has more of an opportunity for future acquisition of capital assets and income although that is not likely in the near term.
 h. The needs of the parties. Based upon the wife's lower income and lower prospects of earning substantially more, she has more of a need for income than the husband notwithstanding his having physical custody of the children, the older of which will turn eighteen in about a year.
Based upon these factors, the testimony, exhibits, etc., all as aforementioned, the court believes that each party is entitled to approximately fifty (50) percent of the marital assets, and hereby enters judgment as follows:
 1. A decree of dissolution of the marriage is entered on the grounds of irretrievable breakdown of the marriage.
 2. Based upon the agreement of the parties, joint custody of the minor children is awarded with primary and physical custody in the husband. The wife shall have rights of reasonable visitation.
 3. The wife will pay child support of $65 per week commencing one week from the date of this judgment in accordance with the child support guidelines as agreed upon by the parties. of the $65.00, $45 a week is for the younger child, Lindsay, and $20 a week is for the older child, Jennifer.
 4. The husband shall pay alimony to the wife of $260 per week commencing one week from the date of this judgment. The husband may deduct the wife's support obligation from said amount and give her credit for same as a matter of convenience. Said alimony shall terminate upon the death or remarriage of the wife. Any cohabitation CT Page 13203 by the wife may be considered in a future modification of the alimony award,[2] but except for the death or remarriage of the wife, the alimony shall never go below $1 per year. The husband shall carry life insurance on his life in the amount of no less than $75,000 naming Carol J. Roy as irrevocable beneficiary, and shall provide her with proof of same upon request. This is to fund the alimony in the event of husband's death. In the event of wife's death or remarriage, this requirement of life insurance shall cease.
 5. The husband shall be entitled to take both children as federal and state tax exemptions.
 6. The husband will carry the children as beneficiaries on his medical insurance with the childrens' unreimbursed health related expenses divided equally between the parties. The wife will pay her share of same within thirty (30) days of receipt of the bills thereof. If said expenses are the result of the husband failing to carry the children as beneficiaries as aforesaid, then such expenses will be the sole responsibility of the husband.
 7. The wife is awarded the 1984 Mercedes and the husband is awarded the 1986 Ford Bronco. The wife shall re-register the Mercedes in her name and return the license plate to the husband. The cost of same shall be paid by the husband. These transactions are to be completed within seven days of the date of judgment.
 8. The personal property arbitration order of Attorney Barbara M. Quinn dated October 3, 1995 is incorporated in this judgment as Exhibit A. The items in dispute are awarded as follows: the 1961 bucket loader to the husband and the riding lawn mower to the wife. All transfers under Exhibit A and as stated in this paragraph are to be accomplished within one week of the date of this judgment.
 9. As a basic premise, the court finds, for the reasons stated above, that the assets of the parties should be equally divided. However, there are exceptions. Accordingly, the court orders as follows:
 (a). The boat and docominium in Maine are to be sold forthwith, if not already sold, and from said sale, after payment of closing costs and reasonable expenses in connection with said sale, the balance left over shall be divided equally between the parties. If there is a deficiency, the parties shall divide that equally and each be responsible for fifty (50) percent thereof.
(b). The real estate at Greenwood, Maine shall immediately be put on CT Page 13204 the market for sale with Dominic Ranucci, Century 21, Brickel, Kilbreth Tierney, 239 Main Street, Lewiston, Maine 04240. The net proceeds of the sale shall be divided equally between the parties. The sales price and terms of sale shall be reasonable. It will be presumed that such price and terms, if recommended by the realtor, are reasonable although each party shall have the right to come back to this court if he or she can show the price and/or terms to be unreasonable. Attorney's fees may be assessed against the party whose claim on this issue in court is deemed to be frivolous.
 (c). The marital premises located at 171 Martin Road, Hebron, Connecticut, consisting of the house and 5 acres, shall be sold as soon as possible. The present broker, Murray Real Estate, shall continue as the broker for same. He shall sell same for a reasonable sum which, based upon the appraisal of Eastern Appraisal Services dated July 8, 1995, the court finds to be $295,000. The parties may contest a substantial deviation from said sum and/or the terms of sale as recommended by the broker in court in the manner described in the preceding paragraph(b). The husband will be solely responsible for the second mortgage taken out by Roy Drywall, Inc. which was originally in favor of The Savings Institute in Willimantic. Since this mortgage (line of credit) was taken out approximately two (2) months prior to the institution of this action (January 28, 1994 to April 4, 1994), it is clear that the proceeds were to be used for the financing of the husband's business(s) at a time when the marriage of the parties had already broken down and that the business(s) the husband will retain have benefited and/or will benefit from said proceeds with little or no benefit to the wife. Additionally, the arrearage pursuant to a prior court order is $9,697.23 per agreement of the parties (Defendant's Exhibit #1). That, too, is the responsibility of the husband. The second mortgage and arrearage aforementioned[3] are to be paid out of the husband's share of the proceeds of the sale of 171 Martin Road, and, in any event, the husband is to hold the wife harmless from these debts. The proceeds of the sale of said premises after deduction of the first mortgage and the reasonable costs of sale shall be divided equally between the parties with payment of the second mortgage and the arrearage to be deducted from the husband's share of said proceeds. The wife may remain in possession of said premises until the sale of same or until her receipt of funds from the sale of other premises sufficient for her to pay for a security deposit, the first month's rent and moving expenses for a rental property to which CT Page 13205 she moves. While residing in the said premises at 171 Martin Road she will be responsible for all utilities thereof, including electric, telephone, water and fuel oil expenses as well as minor repairs required to continue to make said premises habitable. The court declines to make any order regarding payment of the mortgages or taxes beyond the arrearage. In view of the alimony order and the husband's other responsibilities, it does not appear that he can pay the mortgages or taxes at this time. He shall be, however, responsible to keep the property sufficiently insured. Accordingly, time is of the essence in the sale of this property. If it cannot be sold promptly with the five acres, then the parties should agree upon the sale of the house without all of the five acres.
 (d). The property known as 135-137 Martin Street, Hebron, Connecticut is to be put up for sale immediately. The listing is to be with the same broker, Murray Real Estate, who shall sell said premises for a reasonable sum which, based upon the appraisal of Leslie Lewis dated June 10, 1995 (Plaintiff's Exhibit B), the court finds to be $270,000.00. The parties may contest a substantial deviation from said sum and/or the terms of sale recommended by the broker in court in the manner described in paragraph(b) hereof Any rent received for said premises is to be used to pay the mortgage(s) and taxes on said premises. The net proceeds of said sale after deduction of the mortgage balance and taxes, etc., to be paid and reasonable costs of sale, shall be divided equally between the parties.
 (e). As for the remaining land at 171 Martin Road, either 27± acres if the house and 5 acres are sold together or 27± acres plus what is not sold with the house, said land is to be subdivided as a residential subdivision, houses built thereon and sold. The developer will be the defendant, husband, who is to arrange for financing, development, construction and sales. The wife is to co-operate reasonably with the husband in signing the necessary documents including those to obtain financing. All bills in connection with said subdivision development are to be paid from the financing, or advanced by the husband when advance payments are necessary, or paid from the sale of lots. Wife shall not be required to pay any of the bills from her own funds; i.e. other than from the financing, and said bills are to be documented and subject to the approval of the wife prior to their being incurred, which approval shall not be unreasonably withheld. Wife shall decide on approval promptly or may waive approval in CT Page 13206 writing. Husband is not to share in any of the fees or bills charged in connection with the subdivision. Husband is to hold wife harmless from any mechanics liens, attachments, judgments against this or any other properties she owns, executions and garnishments in connection with the bills resulting from the subdivision development, construction and sales. The net proceeds from the sale of lots, houses or the entire subdivision, shall be shared equally between the parties. If substantial progress on his subdivision development has not been made within one year of the date of this judgment, then said land shall be sold, and after payment of reasonably incurred bills, debts and costs of sale, the net proceeds shall be divided equally between the parties. As an incentive for husband to be the developer as aforesaid, the alimony obligation of the husband shall be reduced by the interest the wife could receive on the net proceeds the wife receives from said sale(s) after deductions for federal and state income, capital gains and self employment taxes, calculated at 5% per annum; but as stated earlier, the alimony payments shall never go below one dollar ($1) per year. The husband shall keep accurate records concerning said land and subdivision and same shall be subject, at any time, to review by wife or her representative upon reasonable notice to husband.
 (f). As for the remaining properties or interests therein owned by the defendant, husband, any net proceeds or profits due him from the sale thereof shall be divided equally between the plaintiff, wife, and the defendant, husband, and any deficiencies as to said properties, or any investments, including Colonial Realty, which the husband is required to pay shall be shared equally between the plaintiff, wife, and the defendant, husband, upon reasonably sufficient, documentation/verification to wife. The wife shall pay the same amount as the husband when he pays his share. However, said amounts shall not come from the proceeds of the sale of the properties in paragraphs(a) through(f) hereof unless a lien has been placed against said property for the deficiency. The court's finding as to the plaintiff, wife, being equally responsible for deficiencies is based upon the fact that the properties purchased and the investments made and the debts incurred were all made during the marriage with the intent of both parties sharing in the assets and income as a married couple.
 (g). All businesses or portions thereof presently owned by the defendant, husband, other than real estate, shall remain owned CT Page 13207 by him with the husband to hold the wife harmless from any debts incurred in connection with same.
10. If the payment of counsel fees to Attorney Cynthia Houck per court order of August 4, 1995 has not already been made, it is to be made within one week of the date of this judgment ($340.62 by Carol Roy and $202.50 by John Roy).
11. There will be no retroactive alimony as to the difference between the court order of May 16, 1994 and the alimony order herein. The court has taken into account the order of May 16, 1994 for the defendant husband to make the mortgage payments on 171 Martin Road.
12. All personal property of the parties except for that hereinbefore described listed on the parties' latest financial affidavits shall be divided equally between the parties. This shall include IRA's, checking and savings accounts and any cash value in life insurance policies which the owner is ordered to obtain either by direct payment or loan. Full disclosure, with supporting documentation and the transfers to accomplish said division, shall be made within two (2) weeks of the date of this judgment.
13. The court does find that the defendant husband was not totally candid or forthcoming as to his assets and liabilities thereby requiring the plaintiff's attorney to spend more time and effort to obtain disclosure and information on her own that would not have been necessary if the defendant had been more forthcoming. The defendant, as stated above, was at times evasive and certainly did not fully disclose as stated above. For example, the court finds it unreasonable that the defendant could not or did not disclose the value of his IRA or his interest in 601 Tolland Turnpike on his latest financial affidavit. Additionally, his ability to earn money and increase his assets is much greater than that of the plaintiff. For these reasons, the defendant is ordered to pay $5,000.00 in counsel fees to the plaintiff's attorney.[4] Said amount is to be paid from the net proceeds he receives from the first sale of property, all if possible, otherwise a portion of said fees, and any balance from what he receives from the next sale or sales or half of said fees within six (6) months and the other half within one year, whichever occurs first.
14. With the exception of the aforementioned orders for payment of debts, expenses, attorney's fees etc., each party will CT Page 13208 be responsible for the debts shown on their respective financial affidavits and will hold the other party harmless therefrom.
15. Unless otherwise specified above, all transfers to fulfill the orders of this judgment shall be made within one week of the date of this judgment.
Rittenband, J.
EXHIBIT A
October 3, 1995
REPORT RE PERSONAL PROPERTY ARBITRATION
 ROY V. ROY
The undersigned met with Carol and John Roy on October 3, 1995 and the parties reached the following agreement regarding the distribution of their personal property:
1. Property to Belong to Carol:
two mahogany four poster twin beds antique triple mahogany dresser with mirror CT Page 13209 two small oriental rugs misc. wall hangings cedar chest two lamps oak pedestal table and four chairs — one leaf copper pots and pans — hanging device 2 arm chairs wall clock oak hutch with glass front side by side refrigerator small appliances microwave misc. wall hangings corner jelly cupboard misc. wall hangings old trunk 1 bed sewing machine and chair Singer sewing machine and chair paintings of the children leather living room furniture — sofa, chair and ottoman braided rug 19" Quasar color TV VCR to be repaired or replaced new by John all cooking material dish set in hutch silver, Pfaltzgraf ware, red glasses end table small table one book shelf her books pool furniture Mercedes Motor vehicle Washer and Dryer two lamps floral centerpiece wreath in dining room two paintings in dining room Mediterranean living room set and matching chair one brass lamp Christmas decorations curtains two bedroom lams floral centerpiece in bedroom reasonable allocation of hand tools CT Page 13210
2. Property to Belong to John:
Queen Anne cherry dining room set, table and 2 leaves, serving cart, 4 side chairs and 2 arm chairs Dining room hutch with glass front one skater painting family portrait large oriental rug in dining room 2 rocking chairs bird pictures and hockey pictures filing cabinet patio wicker furniture — couch, table and chairs 32" Quasar color TV stereo system stored Yankee magazines Cherry bedroom set — four poster bed, 2 end tables, triple women's dresser, 2 mirrors Cherry TV cabinet Picture of Portsmouth Harbor 2 speaker cabinets wicker chair in bedroom drum set bowling ball personal clothing snowmobile helmet skis, ski botts [boots] golf clubs and other golf equipment fishing rods and fishing gear safe all tools, pump, and supplies except a reasonable allocation of hand tools to Carol Brunswick pool table with accessories work bench video machine bikes and two 3 wheelers (ATV's) old roll top desk old bottle collection one brass lamp wood stove and generator one small generator John to retain the Bronco which Jennifer drives freezer cherry bed and highboy push mower weed clipper CT Page 13211 horse trailer snowmobile trailer two snowmobiles four wheeler exercise bike
3. Property to Belong to Lindsay and Jennifer:
odd rust velvet chairs, piano and bench, coffee table, two lamps, two speakers, books case, small rocking horse, Mediterranean bookshelves and encyclopedia
 a. Property to Belong to Lindsay:
Maple bed, oak antique dresser with mirror,. small maple desk, mirror and chair lamp
 b. Property to Belong to Jennifer:
four poster canopy bed, triple dresser with mirror, book case and desk in her bedroom, chair end table and lamp, computer.
4. Items to be divided between Carol and John:
one half of the liquor in the bar cabinet wall hangings one half of the cups and saucers in the dining room hutch
There were two items about which the parties could not reach agreement. These items are a 1961 bucket loader in John's possession and a riding mower in Carol's possession. John's belief is that each should retain the item in his or her possession and Carol was undecided as to what should occur.
The Arbitrator Barbara M. Quinn
By Barbara M. Quinn, of Andrews, Quinn, Cosgrove Young, P. C.
I hereby certify that a copy of the foregoing was mailed to all counsel of record and the parties on October 3, 1995.
Barbara M. Quinn Commissioner of the Superior Court CT Page 13212